The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.



**Dated: August 3 2026**

John P. Gustafson
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 25-31966 |
| | ) | |
| Donald B. King | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | JUDGE JOHN P. GUSTAFSON |

## MEMORANDUM OPINION AND ORDER DENYING CONFIRMATION AND ALLOWING DEBTOR THIRTY DAYS TO EITHER FILE A THIRD AMENDED PLAN OR ENTER INTO A JOINT STIPULATION FOR A HIGHER MONTHLY PAYMENT

This matter came before the court on an evidentiary hearing on Confirmation and Trustee's Motion to Dismiss on July 29, 2026. The Chapter 13 Trustee, Debtor, and Attorney for Debtor appeared in person. The court heard evidence related to compliance with 11 U.S.C. Section 1325(b)(1)(B), a provision that states a court may not approve a Chapter 13 plan unless the debtor's plan provides for "all of the debtor's projected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan."

### FACTS

Debtor filed his Chapter 13 case in September of 2025. Official Form 122C-1 reflects

that the Debtor has income over the median income level for the State of Ohio. [Doc. #1, pp. 38-41]. Official Form 122C-2 [referred to herein as the "Means Test"] was filed with the Petition and Schedules. [Doc. #1, pp. 42-49]. No amendments to the Means Test were filed. A review of the Chapter 13 Means Test reflects a deduction of $41.67 on Line 35 for a priority tax claim payment. [*Id*., pp. 18 & 47]. On Line 36, the Debtor listed a deduction of $100 for the "average monthly administrative expense" based on a Chapter 13 payment of $1,000 a month. [*Id*.]. Notably, all three of Debtor's Chapter 13 Plans [Docs. #2, 38, 42] proposed a monthly payment of $560 per month for 60 months. [Doc. #2, p. 1]. The amount of the proposed monthly payment is a few cents lower than the amount on Line 45[1] of the Means Test. [Doc. #1, p. 48].

At the evidentiary hearing, Exhibits were admitted without objection, including a "MyChart" of insurance benefits dates July 27, 2026 [Ex. D], and an insurance plan from Debtor's insurance company [Ex. C]. Also admitted as an Exhibit was claim 7-1, for medical debt in the amount of $13,682.22, but the proof of claim did not reflect when these debt(s) were incurred. The court notes that neither party focused the presentation of evidence on actual expenditures during the six month "lookback period" for calculation of projected disposable income under Sections 101(10A), 1325(b)(2) & (3), and 707(b)(2). Instead, the evidence regarding expenses was of a more general nature.

The first part of the Trustee's Objection was based on the assertion that the dollar amount listed on Line 45 of the Means Test is the amount that general unsecured creditors must receive for a Chapter 13 plan to be confirmed. Accordingly, the deduction for a priority tax claim that would be paid through the Debtor's Chapter 13 Plan had to be "added back" to arrive at a minimum monthly Plan payment – otherwise the payment of the priority claim would reduce the $560 monthly payment that general unsecured creditors were required to be paid under the Means Test calculation. Similarly, if the Chapter 13 Trustee fee were not "added back" in calculating the monthly payment, the administrative fees – which were deducted in calculating the amount on Line 45 – would improperly reduce the $560 per month required to go to unsecured creditors, making the Debtor's Second Amended Plan unconfirmable. An additional issue being that the calculation of the $100 per month deduction was based on a Chapter 13 Plan payment of $1,000 a

---

1/ Note that the Official Forms for the Means Test were amended from Official Form B22C to Official Form 122c. In that revision, the Line numbers on the Official Forms were changed. So, for example, former "Line 59" – the line for "Monthly Disposable Income Under § 1325(b)(2)" is now Line 45, "Calculate your monthly disposable income under § 1325(b)(2)."

month – an amount which was $440 per month higher than what the Debtor had actually proposed to pay.

There were three additional objections to deductions on the Means Test. The first was the deduction for health care expenses. Debtor testified that he had a serious medical issue, which was resolved by treatment. However, because of his previous condition, future tests were required that would be expensive and not covered by insurance. The medical deductions were: 1) the standard "out of pocket health care allowance" of $84. [Doc. #1, p. 43, Line 7c]; 2) a deduction for Health Insurance of $225 per month [Doc. #1, p. 45, Line 25]; 3) a deduction of $412.88 per month for a Health savings account. [*Id*.]. And finally, a deduction of $616 per month for "Additional health care expenses, excluding insurance costs." Thus, the total non-insurance deductions for health care – including the monthly amounts paid into the Debtor's health savings account – was $1,112.88.

Also related to Debtor's previous medical issue was the deduction of $30 on Line 30, as an additional amount for food. [Doc. #1, p. 46, Line 30]. Fresh vegetables were part of Debtor's recommended diet, and he testified that increased his grocery costs.

The Trustee also objected to the deduction of $40 for continuing charitable contributions [*Id*., Line 31] based on the absence of any documentation regarding charitable contributions. The Debtor testified that he makes charitable contributions irregularly, using cash, when he has the funds.

Finally, there was an objection to the deduction for "Optional telephone and telephone services" in the amount of $80. [*Id*. p. 45, Line 45]. The Debtor testified that while he had both a work and a personal cell phone, he needed extra data because he still used his personal cell phone for work, because he had changed jobs and his business contacts had his personal cell phone number.

**LAW AND ANALYSIS**

"In Chapter 13 proceedings, the means test provides a formula to calculate a debtor's disposable income, which the debtor must devote to reimbursing creditors under a court-approved plan generally lasting from three to five years. §§ 1325(b)(1)(B) and (b)(4) .... For a debtor whose income is above the median for his State, the means test identifies which expenses qualify as 'amounts reasonably necessary to be expended.' The test supplants the pre-BAPCPA practice of calculating debtors' reasonable expenses on a case-by-case basis, which led to varying and often

3

inconsistent determinations." *Ransom v. FIA Card Services, N.A.*, 562 U.S. 61, 65, 131 S.Ct. 716, 721-22, 178 L.Ed.2d 603 (2011); *see also*, *Baud v. Carroll*, 634 F.3d 327, 333 (6th Cir. 2011)("For debtors with current monthly income exceeding the applicable median family income, however, § 1325(b)(3) requires courts to determine the amounts reasonably necessary to be expended in accordance with the "means test," i.e., the statutory formula for determining whether a presumption of abuse arises in Chapter 7 cases.").

Under 11 U.S.C. Section 1325(b)(1)(B), because the Trustee has objected and the Debtors' Second Amended Plan does not propose to pay all creditors in full, the court may not confirm the Plan unless, as of the effective date of the Plan, the Plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period is applied to make payments to unsecured creditors.

The Bankruptcy Code does not define the term "projected disposable income." *Hamilton v. Lanning*, 560 U.S. 505, 509, 130 S.Ct. 2464, 2469, 177 L. Ed. 2d 23 (2010); *Penfound v. Ruskin (In re Penfound)*, 7 F.4th 527, 530 (6th Cir. 2021). "But the Supreme Court has held that it is simply the debtor's disposable income, under § 1325(b)(2), adjusted for any 'changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation.'" *Davis v. Helbling (In re Davis)*, 960 F.3d 346, 350 (6th Cir. 2020)(*quoting Lanning*, 560 U.S. at 524, 130 S.Ct. 2464). *Davis* continued: "Determining a debtor's "projected disposable income" under § 1325(b)(1) is therefore a two-step process. *See* [*Lanning*] at 519, 524, 560 U.S. 505, 130 S.Ct. 2464, 177 L.Ed.2d 23. First, the debtor's current "disposable income" is determined by the formula prescribed in § 1325(b)(2). *Id*. at 519, 130 S.Ct. 2464. Second, in certain circumstances, that sum is adjusted for changes "known or virtually certain" to occur during the commitment period." *Id*.

This holding fits in with the Sixth Circuit's earlier decision in *Darrohn*, which held that while the *Lanning* decision focused on the income side of the projected disposable income formulation, the holding clearly applied to 'changes in debtor's income or expenses ....'" *Darrohn*, 615 F.3d at 477 (emphasis in *Darrohn*). In determining whether a deduction for a Means Test expense was permitted, the *Darrohn* court stated: "Because it is undisputed that the Darrohns intended to surrender these properties, this represents a change in the Darrohns' "expenses that [was] known or virtually certain at the time of confirmation." *Id*. The bankruptcy court therefore should have accounted for this changed circumstance, and its failure to do so violated the

4

requirements of Section 1325. *See id*. at 2474." *Id*.

### 1. Adding Back The $41.67 Priority Tax Debt Deduction On Line 35.

Absent other defenses, such as changed circumstances, Line 45 of the Means Test is the amount that must be paid to general unsecured creditors.   Priority claims, such as tax claims, are paid by the Chapter 13 Trustee through the Chapter 13 Plan.   While the Means Test allows a deduction for priority claims on Line 35, courts have held that an "add-back" of the deduction is required to arrive at a monthly payment that will provide unsecured creditors with the required dividend:

> To avoid an absurd result, an above median family income debtor cannot both deduct a priority claim (such as a prepetition domestic support obligation) in calculating projected disposable income and then treat that claim's holder as one of the "unsecured creditors" to which such projected disposable income must be applied under § 1325(b)(1)(B). *See In re Grabarczyk*, 2012 WL 909511, at *8 (Bankr.N.D.Ohio Mar. 14, 2012); *Renteria v. Skelton (In re Renteria)*, 420 B.R. 526 (S.D.Cal.2009); *In re Wilbur*, 344 B.R. 650 (Bankr.D.Utah 2006). *See also In re Johnson*, 408 B.R. 811 (Bankr.W.D.Mo.2009); *In re Williams*, 394 B.R. 550 (Bankr.D.Colo.2008); *In re Echeman*, 378 B.R. 177 (Bankr.S.D.Ohio 2007); *In re Puetz*, 370 B.R. 386 (Bankr.D.Kan.2007); *In re Amato*, 366 B.R. 348 (Bankr.D.N.J.2007); *In re McDonald*, 361 B.R. 527 (Bankr.D.Mont.2007).   By permitting an above median family income debtor to deduct the amount due to priority unsecured creditors, "[t]he purpose of the calculations ... is, quite clearly, to reach an estimate of how much the debtor can afford to pay non-priority unsecured creditors." *In re Wilbur*, 344 B.R. at 654.   Accordingly, as stated in *In re Grabarczyk*, 2012 WL 909511, at *8 (Bankr.N.D.Ohio Mar. 14, 2012)[Whipple, J]:

>> the only reasonable interpretation of the term "unsecured creditors," as used in § 1325(b)(1)(B), is one that refers to all unsecured creditors for whose claims the debtor has not included an expense deduction in calculating disposable income.   Only if payments on an unsecured creditor's claim are not deducted as an expense in calculating projected disposable income may such claims be paid from projected disposable income.

*In re Wise*, 476 B.R. 653, 663 n. 10 (Bankr. D.D.C. (2012); *see also*, In *re Williamson*, 2023 WL 2144534 at *12, 2023 Bankr. LEXIS 451 at **27-28 (Bankr. N.D. Ohio Feb. 21, 2023)("The

current version of Form 122C-2 produces a monthly "disposable income" figure on Line 45 - an amount that Chapter 13 debtors are presumptively required to pay to unsecured creditors, subject to a showing of changed circumstances.   But, Line 45 is not necessarily the required Chapter 13 plan payment. Certain deductions may have to be added back in to calculate what a debtor is actually required to pay the Trustee each month.)(footnotes omitted); *In re Jiter*, 2011 WL 477823, 2011 Bankr. LEXIS 446 (Bankr. E.D. Wis. Feb. 3, 2011).

Accordingly, the Line 35 deduction of $41.67 must be added-back to the amount on Line 45 of the Means Test in calculating the minimum required monthly Chapter 13 Plan payment.

**2. Adding Back The Line 36 Deduction Of $100 For The Chapter 13 Trustee Fee.**

Line 36 is a deduction for the Chapter 13 Trustee's fee.   However, like the Line 35 priority tax issue, this deduction is really a "zero sum" game in terms of the required Chapter 13 monthly payment.   As previously noted, Line 45 determines the amount that must be paid to general unsecured creditors.   Thus, the deduction of the Trustee fee – which will be deducted from the monthly distributions made by the Chapter 13 Trustee – needs to be added back in order for general unsecured creditors to receive the amount calculated and listed on Line 45. *See*, *In re Grabarczyk*, 2012 Bankr. LEXIS 1435 at \*\*14-23 (Bankr. N.D. Ohio March 15, 2012)("In this case, Debtors deducted from CMI on Form B22C their monthly payment on prepetition priority claims in the amount of $314.31 and projected average monthly Chapter 13 administrative expenses in the amount of $20.70.   Since projected disposable income may not be used to pay these expenses, they must add these amounts to their projected disposable income in determining their Chapter 13 plan payment."); *In re Amato*, 366 B.R. 348 (Bankr. D.N.J. 2007)("This Court is persuaded . . . that claims for . . . trustee commissions do not fall within the class of "unsecured creditors" found in 11 U.S.C. §1325(b), as amended by BAPCPA."); *In re McDonald*, 361 B.R. 527, 531 (Bankr. D. Mont. 2007)("As Form B22C deducts the trustee's expense in line 50, Debtor would be double-counting the deduction if he again deducted it from the projected disposable income").

Further, the record reflects that the Line 36 deduction is inflated because if it's based on a monthly payment in excess of any actual proposed monthly Chapter 13 payment.

For both reasons, the Line 36 deduction of $100 must be added-back to the amount on Line 45 of the Means Test in calculating the minimum required monthly Chapter 13 Plan payment.

6

### 3. Trustee's Objection To The Deduction Of Telecommunication Expense Of $80 On Line

Line 23 is for other necessary telecommunication services other than basic home telephone and cellphone services. The cost of basic telephone service is included in the Internal Revenue Service standards for general living expenses. *In re Meade*, 420 B.R. 291, 303-4 (Bankr. W.D.Va. 2009)(Ch. 7 case); *In re Minahan*, 394 B.R. 116, 124 (Bankr. W.D.Va. 2008)(Ch. 13 case); *In re Stimac*, 366 B.R. 889, 891 n.1 (Bankr. E.D. Wis. 2007)("The Internal Revenue Manual supports the trustee's position that the local standard deduction includes basic telephone expenses. *See* I.R.M. §5.15.1.9").

Line 23 of the Official Form allows additional telecommunication expenses: "to the extent necessary for your health and welfare or that of your dependents or for the production of income, if it is not reimbursed by your employer."

Telecommunication services the debtor has had in the past are not automatically "necessary" for the health and welfare of the debtors or their dependents. *Cf.*, *In re Minahan*, 394 B.R. 116, 124 (Bankr. W.D.Va. 2008)(cable and satellite expense were not necessary).

It is Debtor's burden to demonstrate that premium or higher-end cell phone plans are "necessary for your health and welfare or that of your dependents or for the production of income." *See*, *In re Scurlock*, 385 B.R. 814, 816-17 (Bankr. M.D.N.C. 2008). The evidence provided to the court was insufficient to meet the requirements for the deduction. The testimony did not demonstrate why additional data was necessary for Debtor's work. Debtor has a second cell phone provided by his employer. The testimony did not show why the subset of business contacts who call the Debtor on his personal cell phone (rather than on his dedicated business cell phone) justifies $80 a month for additional data. Telephone calls themselves use very little data, and there was no testimony about what documents or other data came to Debtor's personal cell phone, or why those calls and/or documents could not be switched to Debtor's employer-provided work phone.

### 4. Trustee's Objection To The Deduction Of An Additional $30 Per Month For Food On Line 30.

The Debtor did not provide any receipts or other documentation that his grocery expenses exceed the standard deduction allowed for food under the IRS National Standards. The Debtor did testify as to his medical condition and the recommendation that he increase his vegetable

25-31966-jpg    Doc 67    FILED 08/03/26    ENTERED 08/03/26 16:19:41    Page 7 of 10

intake.   While the court would prefer some corroboration when an expense has been put in issue, the court finds that the Debtor met his burden of proof by a preponderance of the evidence.   The Line 30 deduction of $30 will be allowed.

**5. Trustee's Objection To The Deduction Of $40 Per Month For Charitable Contributions On Line 31.**

Again, the Debtor did not provide any receipts or other documentation to support his deduction of $40 per month for charitable contributions.   While receipts would be readily available from charitable organizations and churches that receive monies through checks or electronic transfers, the Debtor testified that he makes small cash donations when he has funds available.

If the amount were any larger, the court would not allow the deduction without something more than the Debtor's testimony.   But here, the debtor was under oath, the testimony was credible, and the amount of the deduction is relatively small.

The Line 31 deduction of $40 will be allowed.

**6. Trustee's Objection To The Deduction Of $616 Per Month For Additional Health Care Expenses, Excluding Insurance Costs On Line 22.**

Line 22 allows debtors to deduct: "Additional health care expenses, excluding insurance costs: The monthly amount that you pay for health care that is required for the health and welfare of you or your dependents and that is not reimbursed by insurance or paid by a health savings account. Include only the amount that is more than the total entered in line 7."

Line 7 is an "out of pocket" allowance of $84 per month that is allowed without any proof of need.   However, that amount is included in the calculation of what additional health care expenses are "required".

Similarly, the language of Line 22 makes it clear that the Line 22 deduction is only for amounts required in addition to those that would be reimbursed by a health savings account. There is a deduction of $412.88 per month for a health savings account on Line 25.   In presenting this matter to the court, the parties did not discuss the health savings account monies, and how they related to the annual expenses the Debtor testified to regarding the costs of medical tests.

Further, while the court found the Debtor's testimony to be sincere, the testimony about what would, and would not, be paid by Debtor's insurance was not particularly persuasive because the documentation provided was not very helpful in making any kind of calculation.   Further, the

25-31966-jpg    Doc 67    FILED 08/03/26    ENTERED 08/03/26 16:19:41    Page 8 of 10

court was not convinced that the Debtor knew what exactly his insurance would and would not pay.

Even with all these deficiencies, the Debtor's testimony could support the argument that he had $616 per month health care expenses, particularly when there are some uncertainties associated with Debtor's health situation.

Unfortunately, the Debtor's testimony might support necessary medical expenses of $616 per month, or annual expenses in the range of $7,000 or $8,000 - assuming the Debtor was correct and insurance was not going to be paying for the annual test(s) he described. The problem is that the Line 22 deduction is only allowed to the extent necessary AFTER the application of the Line 7 deduction of $84 a month AND the application of the health saving account, to which the Debtor contributes $412.88 a month. The Debtor's testimony did not provide sufficient evidence for the court to find medical expenses, over and above what would be paid by insurance, of $1,112.88 a month. That is over $13,000 a year. Debtor's testimony might support something more than half that yearly total, but not the full amount of the total combined health care deductions reflected on Line 7, Line 25 and Line 22, which makes up the $1,112.88 a month the Debtor is asking the court to allow in health care expense deductions.

Moreover, the parties did not address the health care savings account at all, either the amount of Debtor's contribution or how it functions in relation to Debtor's assertions regarding his annual medical expenses. Entitlement to the Line 22 deduction - at least based on the language of the Official Form - requires the HSA contribution to be taken into account in determining what is allowed as a Means Test deduction for additional health care expenses. The case law appears to follow the language of the Official Form,[2] at least in the context of whether the presumption of abuse arises under §707(b). *See*, *In re Ervin*, 2016 WL 721043 at *9, 2016 Bankr. LEXIS 557 at **30-32 (Bankr. W.D. Va. Feb. 23, 2016)(Chapter 7 case); *In re Maura*, 491 B.R. 493, 509 (Bankr. E.D. Mich. 2013)(finding deduction for health savings account "impermissibly duplicates" expense claimed for out-of-pocket health care expenses); *see also*, *In re Weaver*, 2023 WL 2504705 at *5, 2023 Bankr. LEXIS 667 at *14 (Bankr. N.D. Ohio March 14, 2023)(citing *Maura* applying the same principle in the context of Chapter 13 plan modification).

---

2/ It appears that Line 22 of Official Form 122A-2 (for Chapter 7 cases) and Official Form 122C-2 (for Chapter 13 cases) are identical. While prior cases were based on earlier versions of the Means Test forms, the language regarding health care expenses has remained substantially consistent with the approach reflected in the current Official Forms.

Thus, the court finds that the Debtor has failed to meet his burden of proof that the Second Amended Plan proposes to pay general unsecured creditors the amount required by Section 1325(b)(1)(B). *Shaw v. Aurgroup Financial Credit Union*, 552 F.3d 447, 458 (6th Cir. 2009)("For a court to confirm a plan, each of the requirements of section 1325 must be present and the debtor has the burden of proving that each element has been met."). Thus, the Second Amended Plan cannot be confirmed.

The court further finds that, without being able to determine the amount to be allowed as a deduction on Line 22 of the Means Test, the monthly Chapter 13 Plan payment was required to be at least $781.83.

Accordingly, it is

**ORDERED** that the Debtor file a Third Amended Plan or a Stipulated Order setting a higher Plan payment in 30 days, or the Trustee's Motion to Dismiss will be Granted without further notice or hearing.

# # #

25-31966-jpg    Doc 67    FILED 08/03/26    ENTERED 08/03/26 16:19:41    Page 10 of 10